IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIA BROGAN, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MONTGOMERY TOWNSHIP et al., | : | |
| Defendants. | : | NO. 14-6230 |

MEMORANDUM OPINION

PRATTER, J.                                                                                                                    JULY 14, 2015

Maria Brogna,[1] a former Montgomery Township police officer, brings suit against Montgomery Township and several of its agents for alleged gender discrimination, retaliation, breach of contract, and intentional interference with contract, all stemming from possible breaches of a Settlement Agreement between Ms. Brogna and the Defendants in this case. Defendants now seek dismissal of her Amended Complaint. The Court will deny Defendants' Motion to Dismiss, except as to Ms. Brogna's intentional interference with contract claim.

I.       BACKGROUND

Ms. Brogna sued Montgomery Township and several of its agents for gender discrimination in 2008. The parties settled that case in January 2010 before Magistrate Judge Thomas J. Rueter. The Written Settlement Agreement incorporated the terms and conditions agreed to and placed on the record before Magistrate Judge Rueter. Among the terms was a provision that "[e]ffective January 28, 2011, Maria [Brogna] voluntarily resigns from her employment at Montgomery Township." Mot. to Dismiss Ex. E ¶ 2.A. (Doc. No. 16-2)

---

[1] At oral argument, Plaintiff's counsel informed the Court that the case was incorrectly captioned and that Plaintiff's name is Maria *Brogna*, not Maria Brogan. Accordingly, counsel is admonished to prepare and submit the appropriate papers to make such a change in the caption of the case.

(hereinafter "Written Settlement Agreement"). The corollary provision, that the Township would "represent that [Ms. Brogna] is an employee of the Township until January 1st of 2011," was placed on the record before Judge Rueter. Mot. to Dismiss Ex. E 4:22-24 (hereinafter "Recorded Settlement Agreement"). The terms of the Settlement Agreement also required Defendants to provide neutral reference letters for Ms. Brogna, to provide her with Municipal Police Officer [MPO] update training, to provide her with health benefits, and to expunge her disciplinary record.

Ms. Brogna alleges that Defendants breached the terms of the Settlement Agreement, hindering her ability to obtain employment elsewhere. Ms. Brogna sought employment with the Lehigh County Sheriff's Office in October 2010, with the Borough of Emmaus Police Department in February 2011, and with the Mahoning Township Police Department in June 2011. Ms. Brogna was hired by the Lehigh County Sheriff's Office in February 2011 but learned then that Defendants had not given her a neutral reference. The Defendants also had not sent a neutral reference letter to either the Borough of Emmaus Police Department or the Mahoning Township Police Department, neither of which hired Ms. Brogna. Such treatment was based on Ms. Brogna's gender, as Montgomery Township had, previously, provided a male police officer with a neutral reference after he was separated from the force for sexual misconduct.

Defendants also allegedly did not provide Ms. Brogna with the MPOETC Training (Municipal Police Officers' Education & Training Commission) that she was entitled to under the Settlement Agreement. Ms. Brogna learned that Defendants had also notified the MPOETC that Ms. Brogna was no longer an active police officer in Montgomery Township as of March 2010 (when the Written Settlement Agreement was signed), despite the provision in the Settlement Agreement that Ms. Brogna would maintain her employment with the Township.

Moreover, Ms. Brogna alleges that Defendants breached the Settlement Agreement by ending Ms. Brogna's health-care benefits and by failing to expunge her discipline records.

Ms. Brogna alleges that the Borough of Emmaus and Mahoning Township Police Departments did not hire Ms. Brogna because Montgomery Township did not provide the neutral reference letter, did not maintain her status as an active police officer, did not expunge her disciplinary records, and did not provide her with the MPOETC training. She alleges that she suffered damages, including lost wages, benefits, pain and suffering, humiliations, and other damages.

Ms. Brogna brings claims for (1) breach of contract for the breach of the Settlement Agreement; (2) retaliation based on the breaches of the Settlement Agreement; (3) gender discrimination for the breach of the Settlement Agreement that was based on her gender; and (4) intentional interference with contract by the individual defendants causing Montgomery Township to breach the Settlement Agreement.

The Court previously ruled in favor of Defendants upon consideration of an earlier Motion to Dismiss, finding that Ms. Brogna's Complaint did not sufficiently allege what actions by Defendants had violated the Settlement Agreement. However, the Court granted Ms. Brogna leave to amend her complaint, and she has done so. The Court now concludes that Ms. Brogna's Amended Complaint satisfies the applicable pleading standards as to all claims, save her intentional interference with contract claim.

## II.  ANALYSIS

When considering whether a complaint can survive a challenge under Rule 12(b)(6), the Court determines whether the complaint "contain[s] sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Defendants have attached to their Motion to Dismiss a copy of the earlier Settlement Agreement, as well as a transcript of the proceedings before Magistrate Judge Rueter during which the principal terms of the settlement were put on the record. As Ms. Brogna has not contested the authenticity of these documents, the Court will consider them when ruling upon Defendants' Motion. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("We now hold that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

The bulk of Ms. Brogna's claims turn upon whether Defendants breached the Settlement Agreement. Therefore, the Court will first consider the breach of contract claim.

   a. **Breach of Contract**

Under Pennsylvania law, and in keeping with conventional black letter law, the elements of a breach of contract claim are: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) damages. *My Space Preschool & Nursery, Inc. v. Capitol Indem. Corp.*, No. 14-2826, 2015 WL 1185959, at *3 (E.D. Pa. Mar. 13, 2015). The Settlement Agreement at issue is the contract at issue, and Ms. Brogna certainly claims she

has been damaged. Thus, the first and third elements cannot seriously be questioned. This leaves open the second element, to wit, breach. The Court concludes that Ms. Brogna has sufficiently alleged that Defendants breached the Settlement Agreement by (a) failing to provide the neutral reference letter to Ms. Brogna's prospective employers; (b) failing to offer Ms. Brogna with MPOETC training; (c) failing to maintain Ms. Brogna's certification status with the MPOETC; (d) failing to provide Ms. Brogna with agreed-upon health benefits; and (e) failing to expunge Ms. Brogna's disciplinary records, as agreed in the Settlement Agreement.

Defendants maintain that Ms. Brogna has failed to allege a breach of contract. Defendants primarily focus upon Ms. Brogna's allegations that Defendants failed to maintain Ms. Brogna's MPOETC status as an active police officer. Defendants note that the Settlement Agreement does not specifically mention maintaining Ms. Brogna's certification status with the MPOETC. Defendants also try to make much of the idea that the MPOETC regulations require that Montgomery Township inform the MPOETC whenever a police officer's employment is terminated.

However, Ms. Brogna's claim is premised not on the reporting *itself*, but upon the underlying termination of her status as a police officer, necessitating the reporting to the MPOETC. By terminating her, Ms. Brogna alleges, Defendants failed to maintain her employment status in breach of the Settlement Agreement. In other words, the Settlement Agreement required that Defendants allow Ms. Brogna to maintain her employment status *as a Montgomery Township police officer*. According to Ms. Brogna's theory of her case, when Defendants terminated her from that status and then reported her termination to the MPOETC, they breached the Settlement Agreement.

5

Nonetheless, Defendants argue that the Settlement Agreement does not require that Ms. Brogna remain employed as a police officer—only that she continue to be employed by Montgomery Township. Therefore, Defendants argue, terminating Ms. Brogna's status as a police officer did not violate the Settlement Agreement because she remained employed by Montgomery Township. At this preliminary stage of the litigation, the Court reads the Settlement Agreement differently.

When interpreting a contract such as the Settlement Agreement between Defendants and Ms. Brogna, the Court first considers the intent of the parties as expressed by the words used in the contract. *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 452 (3d Cir. 2006). If those words used in the contract are unambiguous, then, as a matter of law, those words control. *Bohler–Uddeholm Am., Inc. v. Ellwood Grp., Inc.,* 247 F.3d 79, 92–93 (3d Cir. 2001).

Here, in order for the Court to rule in Defendants' favor, the Court would have to find that the contract unambiguously requires only that Ms. Brogna be employed by Montgomery Township in any capacity—not that she maintain her employment in her specific position as a police officer. The Court cannot reach this conclusion. Indeed, to do so would not be sensible. The Settlement Agreement makes two explicit references to the requirement that Ms. Brogna remain in her employment: the first is in the Written Settlement Agreement, which reads, "Effective January 28, 2011, Maria [Brogna] voluntarily resigns from her employment at Montgomery Township." Written Settlement Agreement ¶ 2.A. The second explicit reference is in the Recorded Settlement Agreement, which reads, "[Defendants] will represent that [Ms. Brogna] is an employee of the Township until January 1st of 2011." Recorded Settlement Agreement 4:22-23. These provisions, read together, put a moratorium on the Township's ability to formally terminate Ms. Brogna and set a deadline for when Ms. Brogna must herself resign the

6

Township's employ. The parties now dispute how broadly the Court should read the words "employee" and "employment" as they relate to the moratorium—that is, could the Township employ Ms. Brogna in any capacity it wished during the moratorium period during which it could not fire her, or did the Township have to employ Ms. Brogna as a police officer?

The Court concludes that the Settlement Agreement did not unambiguously allow Montgomery Township to end Ms. Brogna's employment as a police officer so long as she remained employed in some, i.e., absolutely *any*, capacity by Montgomery Township—the Settlement Agreement is at least ambiguous as to this point.[2] The Court reaches this conclusion by considering these terms within the context of the entire agreement. *NorFab Corp. v. Travelers Indem. Co.*, 555 F. Supp. 2d 505, 509 (E.D. Pa. 2008) ("The court should not consider individual terms unmoored from their context but should instead consider the entire contractual provision to determine the intent of the parties."). The Court concludes that the term "employment," when read in the context of the Settlement Agreement, could be defined as "a person's trade or profession." *The New Oxford American Dictionary* 555 (2d ed. 2005). Ms. Brogna's profession, according to the Amended Complaint, was as a police officer (Defendants contest otherwise, but, at this stage, the Court must accept as true the allegations in the Amended Complaint).

The employment provisions in the Settlement Agreement appear to create a set, limited period during which Ms. Brogna would have the opportunity to seek alternative law enforcement employment while still a police officer employed by Montgomery Township. Consider, for example, the second part of the sentence containing the at-issue provision: "[Defendants] will

---

[2] The Court is selecting its words deliberately. The Court is only ruling, at this point, that Defendants' proposed reading of the Settlement Agreement is not *unambiguously* correct. The Court is not ruling, at this time, whether Ms. Brogna's proposed ruling is unambiguously correct, or whether the Settlement Agreement is ambiguous. That issue is not properly before the Court as the parties have not briefed the issue from such a posture.

represent that [Ms. Brogna] is an employee of the Township until January 1st of 2011 and [Defendants] will send a neutral letter [of reference] . . . ." Recorded Settlement Agreement 4:22-24. A few lines later on the transcript, Defendants agree to "[s]ending the neutral letter with respect to her service and dates of service, et cetera, from the Township regarding her employment." *Id.* at 5:2-4. The Township also agreed to make the MPOETC training available to Ms. Brogna. These provisions' common purpose was to allow Ms. Brogna to maintain her status and certification as an active police officer while seeking alternative law enforcement employment.

The Court cannot conclude that the contract unambiguously allows for Defendants to terminate Ms. Brogna's status as a police officer in such a manner that the Complaint alleges that the Township did. The fruits of this alleged breach of contract, including the reporting to the MPOETC, would therefore be recoverable if the allegations in the Complaint are taken as true.

The other alleged breaches of the contract are likewise sufficiently articulated. Ms. Brogna alleges that Defendants failed to provide neutral reference letters to Ms. Brogna's prospective employers, in violation of paragraph B.3 of the Written Settlement Agreement. *See* First Am. Compl. ¶¶ 50, 76. Ms. Brogna also alleges that Defendants failed to offer her the MPOETC training in violation of paragraphs B.4 and B.5 of the Written Settlement Agreement, *see* First Am. Compl. ¶ 51, failed to provide Ms. Brogna with agreed-upon health benefits in violation of paragraph 3 of the Written Settlement Agreement, *see* First Am. Compl. ¶ 136, and failed to expunge Ms. Brogna's discipline records in violation of paragraph B.1 of the Written Settlement Agreement, *see* First Am. Compl. ¶ 136.

Ms. Brogna's allegations of damages are sufficient. She alleges that she suffered lost wages and other damages from the breaches, stemming from her lost employment with the

Borough of Emmaus and Mahoning Township Police Departments. Ms. Brogna alleges that those police departments declined to hire her because of the various breaches by Defendants that made her an undesirable job candidate. The police officer positions were, the Court infers, more desirable to Ms. Brogna than the Sheriff's Office position. The Court draws this inference from the allegation that Ms. Brogna continued to seek the police officer positions even after being hired by the Sheriff's Office. Further, the Settlement Agreement contemplates that Ms. Brogna would seek further employment in a job requiring MPOETC certification, but the Sheriff's Office position does not require such certification. The Court thus infers that the lost job opportunities caused her damages notwithstanding her eventual hiring by the Lehigh County Sheriff's Office. The Court also notes that Pennsylvania law does allow for nominal damages from a breach of contract. *Ins. Co. of Greater N.Y. v. Fire Fighter Sales & Serv. Co.*, No. 2:11-1078, 2015 WL 737576, at *9 (W.D. Pa. Feb. 20, 2015) ("Under Pennsylvania law, if a party is able to prove breach of contract but can show no damages flowing from the breach, the party is entitled to recover nominal damages.").

Accordingly, Ms. Brogna has sufficiently alleged a breach of the Settlement Agreement.

b. **Gender Discrimination Claims**

To support a Title VII claim for gender discrimination, as well the mirrored claim under the Pennsylvania Human Relations Act, Ms. Brogna must allege that "(a) she belongs to a protected class, (b) she was qualified for the position, (c) her employer took an adverse employment action against her, and (d) the adverse action occurred under circumstances that raise an inference of discrimination." *See Sarullo v. U.S. Postal Serv.,* 352 F.3d 789, 797 (3d Cir. 2003). An "adverse employment action" includes "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different

responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). "Adverse employment actions" can include actions that harm a plaintiff's employment prospects elsewhere. *See Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 157 (3d Cir. 1999) ("Post-employment actions by an employer can constitute discrimination under Title VII if they hurt a plaintiff's employment prospects."). An inference of discrimination arises if, for example, similarly situated individuals outside the plaintiff's protected class were treated more favorably than she was. *Anderson v. Wachovia Mortgage Corp.*, 621 F.3d 261, 273 (3d Cir. 2010).

Ms. Brogna has sufficiently alleged a claim for gender discrimination. She has alleged that Montgomery Township (a) failed to provide a neutral reference letter to Ms. Brogna's prospective employers; (b) failed to offer her MPOETC training; (c) failed to maintain her status as an active police officer; (d) failed to provide her with agreed-upon health benefits; and (e) failed to expunge her discipline records—all in violation of the Settlement Agreement. These alleged actions, if true, would constitute adverse employment actions, as they all either made her less attractive to potential employers or significantly altered her employment status. The inference of discrimination is made plausible both because the adverse employment actions were breaches of the Settlement Agreement that itself arose because of gender discrimination and because the Complaint alleges that Montgomery Township treated a male former employee who had been terminated for sexual misconduct more favorably by providing his prospective employers with neutral reference letters.

Therefore, Ms. Brogna's claims for gender discrimination will survive the Motion to Dismiss.

c.  **Retaliation**

"A prima facie case of illegal retaliation requires a showing of (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015). Here, Ms. Brogna alleges that her protected activity was bringing and settling a prior lawsuit for gender discrimination. She alleges the second prong of the prima facie case by alleging the various breaches of the settlement agreement. These breaches "might have dissuaded a reasonable worker from making or supporting a charge of discrimination," *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 195 (3d Cir. 2015), as they cost her employment opportunities with two prospective employers and cost her significant benefits of the bargain she had litigated and negotiated to obtain. Moreover, her allegation of a causal nexus between her protected activity and the alleged adverse action is plausible. Ms. Brogna alleges that Defendants breached various provisions of the Settlement Agreement during the course of the several months immediately following the reaching of the agreement. This alleged pattern of antagonism over the time period shortly following the protected activity prompts the Court to find plausible, at this preliminary stage, the allegation that the constitutionally protected activity substantially motivated the adverse action. *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) ("To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.").

### d. Intentional Interference with Contract

Finally, Ms. Brogna argues that the individual defendants intentionally interfered with her contract with Montgomery Township. "To establish an intentional interference with contractual relations under Pennsylvania law, a plaintiff must demonstrate four elements: (1) a contractual or prospective contractual relationship between the plaintiff and a third party; (2) purposeful action by the defendant, intended to harm the relationship or to prevent a prospective relationship; (3) the absence of privilege or justification for the defendant's actions; and (4) actual legal damage as a result of the defendant's conduct." *Kovach v. Serv. Pers. & Employees of the Dairy Indus., Local Union No. 205*, No. 2:12-00432, 2014 WL 4924912, at *14 (W.D. Pa. Sept. 30, 2014).

Here, Ms. Brogna has alleged that the individual defendants are all employees of Montgomery Township acting as its agents, which defeats her claim. *See Kaidanov v. Pennsylvania State Univ.*, No. 14-3191, 2014 WL 7330462, at *7 (E.D. Pa. Dec. 23, 2014) ("[A]gents of a company cannot tortiously interfere with a contract between that company and a fellow employee."). The Court will dismiss this claim with prejudice.

### III.   CONCLUSION

For the above-mentioned reasons, the Court will grant the Motion to Dismiss as to Ms. Brogna's intentional interference with contract claim, and deny it in all other respects. An appropriate order follows.

BY THE COURT:

_Gene E.K. Pratter_____
GENE E.K. PRATTER
United States District Judge